JAMESON v. UNITED STATES FARM LAND CO.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1913.)

No. 3,899.

BROKERS (§ 52*)—COMPENSATION—FAILURE OF NEGOTIATIONS.

Defendant agreed to pay plaintiff a specified commission for procuring S. to undertake the sale of a tract of land on terms to be agreed upon between defendant and S. The same day defendant wrote S., stating that the price to defendant was to be $35 an acre, that on each $200,000 received by it in cash S. was to be paid $40,000, that S. was to be charged interest at 5 per cent. on $2,000,000, less receipts from sales by him, and that further details might be agreed upon when an agreement was made. S. replied, suggesting certain modifications, by which he was to be paid certain percentages of the commission in cash, dependent on the price for which the land was sold, each sale was to be treated as a separate trans-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

action, settlements to be made monthly, and no interest to be charged. Defendant again wrote S., suggesting that the details might be arranged later, after S. had examined the land, and stating that it would close an agreement with him on the conditions outlined in his letter, subject to some qualifications regarding manner of paying the percentage of cash received and the interest item. *Held*, that these letters constituted no contract between defendant and S., since the modifications suggested by S. constituted a rejection of the original offer, and these modifications were not accepted by defendant, and hence plaintiff was not entitled to the agreed commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 73; Dec. Dig. § 52.*]

In Error to the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Action by A. Y. Jameson against the United States Farm Land Company. Judgment for defendant, and plaintiff brings error. Affirmed.

M. H. Boutelle, of Minneapolis, Minn. (A. M. Higgins, of Minneapolis, Minn., on the brief), for plaintiff in error.

Edward T. Young, of St. Paul, Minn. (Thomas D. O'Brien and Royal A. Stone, both of St. Paul, Minn., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. This action was brought by Jameson to recover from the Land Company damages for breach of contract. On the trial at the close of the plaintiff's evidence, the action was dismissed on the merits on motion of counsel for defendant. This ruling of the court is assigned as error. It was alleged in the complaint that the Land Company, on or about September 1, 1911, offered and proposed to Jameson that if he would procure one M. W. Savage to undertake the handling and sale of a tract of land known as "Chowchilla Ranch," in California, containing about 108,000 acres, on terms to be agreed upon between the Land Company and M. W. Savage, the Land Company would pay Jameson as and for a commission for negotiating said sales agency contract a sum equal to 5 per cent. of the amount received by the Land Company from sales made by said Savage on said sales agency contract, and in addition thereto a lump sum or bonus of $25,000; that Jameson accepted this proposition, and subsequently procured said M. W. Savage to undertake the handling and sale of said Chowchilla ranch on terms proposed by the Land Company; that after Jameson had procured Savage to act as sales agent upon terms proposed by the Land Company, the latter wholly refused to perform its contract with Savage, to the damage of Jameson in the sum of $214,000. The evidence material to the cause of action pleaded appears from the record to be as follows:

Prior to September 21, 1911, Jameson had been authorized by the Land Company to negotiate for a sale of the Chowchilla ranch in con-

sideration of a certain commission. On the above date, however, the relations of the parties were entirely changed by the following writing:

"United States Farm Land Co.

"St. Paul, Minn., Sept. 21, 1911.

"Mr. A. Y. Jameson, Minneapolis, Minn.

"Dear Sir: We hereby rescind and withdraw all propositions heretofore made you, as to commission you would receive in event of your making a sale of the Chowchilla ranch in California, and we hereby agree to give you, in event of our making a sale, or sales contract, with M. W. Savage, of Minneapolis, at a price of thirty-five ($35) dollars per acre, a commission of five (5%) per cent., and a further sum of twenty-five thousand ($25,000) dollars, conditioned, however, upon the fulfillment of the contract by Mr. Savage; it being hereby agreed that the commission is not earned, due, or payable except upon the fulfillment of the contract by Mr. Savage. When we have received the net sum of three hundred thousand ($300,000) dollars in cash from Mr. Savage's sales, there is earned, and will be paid to you, the sum of twenty thousand ($20,000) dollars, and a like sum will be earned and paid when a further sum of three hundred thousand ($300,000) dollars has been received by us, and so on, until you have received your full commission; we agreeing that when we have received two million ($2,000,000) dollars in cash that your whole commission will then be earned, due, and will be paid by us, but the same is not earned until payments are received by us as specified herein.

"Very respectfully,          United States Farm Land Co.,
          "By G. D. Eygabroad, V. P."

On the same day the Land Company wrote the following letter, which was delivered to Savage:

"United States Farm Land Co.

"St. Paul, Minn., Sept. 21, 1911.

"Mr. M. W. Savage, Minneapolis, Minn.

"Dear Sir: Subject to previous sale, option or conditions that would make it not advisable for us to enter into a sales agreement with you, we will recommend entering into a sales contract with you on the Chowchilla ranch, in the San Joaquin valley of California, on the following terms: Price or consideration to us thirty-five ($35) dollars per acre, you to sell at least ten thousand (10,000) acres the first three (3) months after entering into the contract with us, and a like amount the succeeding three (3) months. At the end of nine (9) months you are to have sold at least thirty-five thousand (35,000) acres, and at the end of twelve (12) months from the date of the agreement at least fifty thousand (50,000) acres, we to receive all the cash and prepare and issue the contacts of sale to your purchasers. When we receive two hundred thousand ($200,000) dollars in cash, we are to turn over to you forty thousand ($40,000) dollars and continue paying to you a like amount on each succeeding two hundred thousand ($200,000) dollars we receive in cash, and as soon as same is received, provided the same does not exceed the amount of cash that would be due you, based on your profits over and above thirty-five ($35) dollars per acre and the percentage of cash we receive in proportion to the amount of deferred payments on sales made by you. We will pay the taxes on the unsold portion of the ranch during the term of the agreement to be made, or until we have received our equity in same; your purchasers, of course, to pay taxes from the date of their purchase. Your purchasers to pay six (6%) per cent. interest on deferred payments. We to charge you interest at five (5%) per cent. on two million ($2,000,000) dollars until such time as we have received two million ($2,000,000) dollars in cash net from your sales, the cash that we receive from such sales to be credited on the two million ($2,000,000) dollars and interest stopped on such amount. Further details to be mutually agreed upon at the time the agreement is made.

"Inasmuch as we are absolutely tying this property up with you, and you are taking same entirely out of our hands, we shall require that you satisfy us as to what you will do in the way of advertising and of your ability to make sales and comply with the conditions of the contract. This we believe you can easily do. While we do not desire, at this time, to absolutely option the land to you, before our regular agreement is made, it is our belief that we will be able to contract with you on the terms and conditions stated herein; but should an option or previous sale be made, unbeknown to us, by one of our other offices, or should some condition arise that would make it impossible for us to fulfill our part of the agreement to be made, we would wish to decline to make same; but if you make a trip to California and the proposition is acceptable to you, we believe there will be no trouble whatever in our carrying out our part of the agreement. There will also be incorporated in our agreement, and made a part thereof, that should you fail and not be successful in selling the land, as you anticipate, or as you would agree, and we were unwilling to extend the agreement, that you would pay us forty ($40) dollars per acre for the land you had sold and we to turn over to you your profits on same in cash and contracts in the same proportion that we received from sales by you.

"Very respectfully,                    United States Farm Land Co.,
                                       "By G. D. Eygabroad, V. P."

Also, on the same day, E. B. Savage, representing M. W. Savage, wrote to the Land Company the following letter:

"M. W. Savage Interests, Administrative Offices.

"Minneapolis, Sept. 21, 1911.

"Mr. G. D. Eygabroad, c/o United States Farm Land Co., St. Paul, Minnesota.

"Dear Sir: In coming over on the car I studied your letter of September 21st in regard to giving us a selling contract on the Chowchilla ranch. I furthermore took up some of the details with Mr. M. W. Savage on my return to the office. It seems to us that our ideas coincide in a general way, but we believe that the contract drawn on a basis of a cash commission of 7% and 3½% is more easily understood than the plan which you mentioned, for the simple reason that on the 7 and 3½% basis each sale is treated as an individual transaction, and the amount of commission is fixed in such a manner as to avoid any possible question. The result is practically the same in both cases, as you will discover if you work it out on possible sales.

"Under our arrangement, if we sell the land at less than $47 an acre, we are entitled to no cash commission until the entire deal is cleaned up: but we do not want you to get the idea that, because of this, we would not make sales under $47, if it became necessary. We would make these sales, treating them as big deals on which we can afford to wait for our commission, as we would be under no selling cost. Now, if we sell tracts of land for all cash, I think you will agree that we are entitled to at least 50% of our full commission. We believe it is no more than fair to ask for monthly settlements on the basis of sales made during the previous month, because we are going to be under the necessity of tieing up a great deal of cash in this deal, and we do not see where there is any material advantage to you in asking us to wait the three months before we get a settlement.

"Now, in regard to making sales. We are willing to sell on your regular terms of one-third cash and the balance in five yearly payments, and believe we can do so. There may be special cases come up where we would want to make, and where you would want us to make, different arrangements rather than turn down the sales. Under these circumstances we will be glad to confer with you, and leave the decision, both as to the terms to be made and the commission we would be entitled to under these terms, up to you.

"In looking over your outline hurriedly this noon I did not stop to question the interest item. On considering the matter further, we have come to the conclusion, inasmuch as you are receiving $5 more per acre for the land selling it in this way than you were asking for it on a straight sales basis; that you ought to be willing to stand this interest charge, which would amount

in a year, on the basis you have figured it, to about $100,000. You have had this investment for some time, and have been paying interest charges on it (this is merely my impression from the fact that Mr. Jameson has been working on the sale of the land for almost a year), and the amount you are granting is three months more interest charges, because at the end of three months you will certainly know whether or not it will pay you to continue the sales contract.

"We do not believe that we can afford to pay $25,000 for each three months trial in selling up to the schedule, in addition to the large amount we would have to put into it as an advertising selling campaign, to say nothing of the general expense, etc. You realize that in making an arrangement of this kind we do not figure on the basis of everything going as we expect. We figure on the worst possible side of the case, and base our judgment on the amount we are willing to lose if we make a flat failure. Both Mr. Savage and myself have full confidence in our ability to sell the land, because if we should fall down it would be the first time we have ever made a failure on a selling proposition. I believe that our organization is peculiarly adapted to this line of work, and I think that if we work together on the basis outlined (copy of which is attached) that it will be greatly to our mutual advantage.

"We have outlined to you what we are willing to gamble on, on our ability to make good, and the question up to you I believe is whether we have impressed you sufficiently, so that you are willing to tie up your property for three months and find out whether or not we can get 'the name on the dotted line.' With kind personal regards, I remain,

"Very truly yours,                                     E. B. Savage.

"We will attempt to sell the Chowchilla ranch for you on a commission basis, our commission to be all that we get for the land above $35 per acre. You are to pay us a cash commission of 7% on all sales made by us for you, providing such sales are made on a basis of $60 per acre or better and one-third of the selling price is paid in cash. If sold at $47 per acre, we are to receive 3½%. Each sale to be treated as a separate transaction, and all settlements to be made monthly. If sales are made for all cash, then we will be entitled to 50% of our full commission.

"We will sell on your regular terms of one-third cash and balance in five yearly payments. Any change from these terms except cash must be O. K.'d by you. When we have turned over to you contracts amounting to $2,790,000, cash on same amounting to $790,000 and $2,000,000 in mortgages, we will divide the mortgage and cash received until you have received payment in full for land at $35 per acre, and from that date on you turn over to us the proceeds of all future sales. If we fail to sell on schedule outlined, you have the right to revoke our selling contract and pay us the commission due us on a basis of the land netting you $40 per acre, and you can pay us either in this land at $35 cash or mortgage."

On September 22, 1911, the Land Company wrote to M. W. Savage the following two letters:

"United States Farm Land Co.

"St. Paul, Minn., Sept. 22, 1911.
"Mr. M. W. Savage, Minneapolis, Minn.

"Dear Sir: Replying to Mr. E. B. Savage's letter of September 21st, handed to us by Mr. Jameson, we feel, considering the fairness that each of us, we believe, intends to extend to the other, that there will be no trouble or difficulty in arranging for the sale of the Chowchilla ranch with you, on a basis of thirty-five ($35) dollars per acre, provided the property meets with your approval on examination. There are many minor details to be considered, and which it will be necessary to incorporate in our final agreement, that it is not necessary to take up at this time. I know we are willing to be more than fair and liberal with you, and believe you feel the same towards us, and as to the final matter of arranging the details, we frankly say we believe there will not be the least particle of trouble. We could entirely discard

the letter I wrote you yesterday and Mr. Savage's letter of September 21st, and with the verbal understanding we have and the fairness we intend to extend to each other, we certainly can come together, if the examination of the property meets with your approval.

"We do not think it necessary, at this time, to take up further the details referred to in either your letter or our former letter. We shall be glad to have you go and make an examination of the ranch. Before you leave, we desire to see you, and shall be glad to give you any further information we can, and would want to give you a letter of introduction to our California manager, who will at that end of the route give you every assistance possible and all the information you could expect. Trusting we may become associated in this matter, and that it will prove to our mutual benefit, financially and otherwise, we remain,

"Very respectfully,                    United States Farm Land Co.,
                                          "By G. D. Eygabroad, V. P."

                    "United States Farm Land Co.

                                   "St. Paul, Minn., Sept. 22, 1911.
"Mr. M. W. Savage, Minneapolis, Minn.

"Dear Sir: Replying further to letter of Mr. E. B. Savage, dated September 21st, we would advise that he make the trip to California at once, and on his return, if his examination of the property is satisfactory, we will close a sales contract agreement on the conditions outlined in said letter, subject to, perhaps, some qualifications regarding per cent. and the manner of paying the percentage of cash received to you, and the interest item. We believe a better arrangement can be agreed upon as to the payment of commissions to you, which would be just as favorable to you.

"We will positively agree, at this time, to waive the item of interest for at least three (3) months from the date of our final contract with you. Further than that will be a matter of agreement at the time same is entered into. You, of course, understand from my previous letter that all cash and deferred payments that were turned to us from sales would be credited and offset the amount that would be drawing interest.

"As further stated in my former letter, we believe there will be no difficulty whatever in agreeing on all the details in the general agreement. If we had the least doubt of this, we would not consent to your spending your time and money to examine this proposition. These conditions, of course, are all subject to the sale of the property as stated in our recent letter. We, however, expect to be very fair and reasonable with you, even on propositions that might come to us after you start to examine this property, and know we will be more than fair and liberal with you, and feel you will be the same with us.

"Very respectfully,                    United States Farm Land Co.,
                                          "By G. D. Eygabroad, V. P."

If there was any contract entered between the Land Company and M. W. Savage for the handling and sale of the Chowchilla ranch, it must be found in the letters above mentioned. We are not only satisfied of this by an examination of the record, but Mr. Jameson and Mr. Savage both testified that there was no contract made after the return of Mr. Savage from California, and that whatever contract there was existed before that journey. Mr. Jameson, when his attention was called by counsel to the foregoing letters and was asked, "It is true, isn't it, that unless there is a contract contained in these instruments to which I have now called your attention, between Mr. Eygabroad and Mr. Savage, then no contract was ever made between them about Chowchilla Ranch?" answered, "That is all the contract there was." Jameson, having on the 21st of September accepted the proposition of the Land Company with its conditions, cannot claim

the benefit of any transaction between himself and the Land Company transpiring before that date to support the contract which he pleaded in his complaint, and to support which he introduced evidence at the trial. It seems to us very clear that the letters herein set forth show that the minds of the parties never met in agreement upon the same subject in the same way. In other words, there was no acceptance on the part of either party of the proposition offered by the other. As mentioned by the trial court, there was no agreement arrived at by the parties in regard to the item of interest at 5 per cent. for one year on $2,000,000.

The case of M. & St. L. Ry. Co. v. Columbus Rolling Mill Co., 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376, is instructive. In that case the Supreme Court declared the law as follows:

"A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance."

The letter of E. B. Savage, under the rule quoted, would constitute a rejection of the letter of the same date written by the Land Company, and the other two letters written by the Land Company on September 22d did not assent to the proposed modifications of the original offer contained in the letter of E. B. Savage, but suggested still other modifications As in our opinion there was no contract ever entered into between the Land Company and Savage, it becomes unnecessary to discuss the matter of damages or the authority of the officers who signed the letters of the Land Company.

We have examined the other assignments of error, relating to the exclusion of evidence, and we find no error in the rulings of the court; moreover, we cannot see how, if the rulings had been in favor of the plaintiff, the result of the trial could have been different than it was. We have carefully considered the exhaustive brief filed by counsel for plaintiff in error, but it seems to us that the plain facts appearing in the letters quoted prevent a lengthy discussion in the decision of the case.

Judgment affirmed.